**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| | |
| CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION | MASTER DOCKET |
| | 18-md-2865 (LAK) |
| This document relates to: | |
| 18-cv-07824; 18-cv-07827; 18-cv-07828; | |
| 18-cv-07829; 19-cv-01781; 19-cv-01783; | |
| 19-cv-01785; 19-cv-01788; 19-cv-01791; | |
| 19-cv-01792; 19-cv-01794; 19-cv-01798; | |
| 19-cv-01800; 19-cv-01801; 19-cv-01803; | |
| 19-cv-01806; 19-cv-01808; 19-cv-01809; | |
| 19-cv-01810; 19-cv-01812; 19-cv-01813; | |
| 19-cv-01815; 19-cv-01818; 19-cv-01866; | |
| 19-cv-01867; 19-cv-01868; 19-cv-01869; | |
| 19-cv-01870; 19-cv-01871; 19-cv-01873; | |
| 19-cv-01894; 19-cv-01896; 19-cv-01918; | |
| 19-cv-01922; 19-cv-01926; 19-cv-01928; | |
| 19-cv-01929; 19-cv-01931; 19-cv-10713; | |
| 21-cv-05339. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF
SKATTEFORVALTNINGEN'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN
EVIDENCE OF COMPARATIVE FAULT OR STATUTE OF LIMITATIONS
DEFENSES**

**TABLE OF CONTENTS**

**Page(s)**

I.    PRELIMINARY STATEMENT ..................................................................... 1

II.   RELEVANT FACTS ................................................................................... 2

III.  LEGAL STANDARD ................................................................................. 5

IV.   ARGUMENT ............................................................................................... 8

A.    Ms. Rømer's Problem Catalog.................................................................. 8

B.    Mr. Jeppesen's 2007 Memorandum......................................................... 10

C.    SIR's Reports (2006, 2010, 2013, 2014, 2015) ...................................... 12

D.    The National Audit Office's 2016 Report ............................................... 16

V.    CONCLUSION .......................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Banque Franco–Hellenique de Commerce Intern., et Maritime, S.A. v. Christophides*, 106 F.3d 22 (2d Cir. 1997) ...........................................................6

*Casmento v. Volmar Constr., Inc.*, 2022 WL 1094529 (S.D.N.Y., Apr. 12, 2022)................18, 19

*Cook v. Hatch Assocs.*, No. 02-CV-0065A, 2007 WL 1267023 (W.D.N.Y., Apr. 30, 2007) ...................................................................................................................19

*Estate of Hatch, ex rel. Ruzow v. NYCO Minerals Inc.*, 704 N.Y.S.2d 340 (3d Dept. 2000) ...........................................................................................................7

*George v. Celotex Corp.*, 914 F.2d 26 (2d Cir. 1990) ....................................................5

*Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250 (S.D.N.Y. 2015) .............................11

*In re Blech Securities Litigation*, No. 94 CIV. 7696 (RWS), 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2023) ...........................................................................................11

*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-CV-04051, 2023 WL 8039623 (S.D.N.Y. Nov. 20, 2023) ...................7, 12

*In re Customs and Tax Administration of the Kingdom of Denmark (SKAT) Tax Refund Litigation*, No. 18-CV-07824, 2024 WL 3937599 (S.D.N.Y. Aug. 26, 2024) ...........................................................................................................12

*JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393 (S.D.N.Y. 2004) ..............................1, 6

*Luce v. United States*, 469 U.S. 38 (1984).........................................................................5

*McClain v. Pfizer*, No. 3:06-CV- 01795-VLB, 2010 WL 746777 (D. Conn. Mar. 1, 2010) .............................................................................................................21

*McLeod v. Llano*, No. 17CV6062ARRRLM, 2021 WL 1669732 (E.D.N.Y., Apr. 28, 2021) .............................................................................................................17

*Paramount Film Distribution, Corp. v. State of N.Y.*, 30 N.Y.2d 415 (1972) ...............................6

*Perry v. Ethan Allen, Inc.*, 115 F.3d 143 (2d Cir. 1997)....................................................17

*United States v. Murgio*, No. 15-CR-769(AJN), 2017 WL 365496 (S.D.N.Y. Jan. 20, 2017) .............................................................................................................14

*United States v. Paredes*, 176 F. Supp. 2d 179 (S.D.N.Y. 2001) ...................................................5

*United States v. Southland Corp.*, 760 F.2d 1366 (2d Cir. 1985) (....................................................5

*Von Ancken v. 7 East 14 L.L.C.*, 98 N.Y.S.3d 32 (2019)....................................................5

*Waksman v. Cohen,* No. 00 CIV. 9005, 2002 WL 31466417 (S.D.N.Y. Nov.4, 2002) .................................................................................................................6

## STATUTES, RULES, AND REGULATIONS

Fed. R. Evid. 401 .................................................................................................................5

Fed. R. Evid. 402 .................................................................................................................5

Fed. R. Evid. 403 ....................................................................................................5, 15, 17, 20, 21

## I.    PRELIMINARY STATEMENT

Plaintiff Skatteforvaltningen's ("SKAT") own documents show that it knew for at least a decade that the information it sought from dividend withholding reclaim applicants was not sufficient to allow SKAT to verify whether the applicants were in fact entitled to the refunds. Internal whistleblowers repeatedly expressed concerns, as did SKAT's internal auditors.  But SKAT did nothing to address the problem, leading Denmark's National Audit Office to conclude in 2016 that SKAT's handling of the issue had been "extremely inadequate."  SKAT asks the Court to exclude the whistleblower complaints, internal audit reports, and National Audit Office conclusions as irrelevant and unduly prejudicial.  SKAT—which has taken the position in this litigation that it is the functional equivalent of the Danish government—is essentially seeking to exclude the evidence of the investigation it conducted of itself.  But its arguments are unpersuasive: all this evidence goes squarely to important issues in the case and its probative value is not substantially outweighed by the risk of unfair prejudice.

First, SKAT has brought suit against the defendants alleging fraud, aiding and abetting fraud, negligent misrepresentation, payment by mistake, and unjust enrichment.[1]  Each of those theories of liability has, baked in, a question regarding SKAT's own behavior during the relevant time period.  One of the elements of fraud under New York law asks whether the plaintiff *relied justifiably* on alleged false statements made by the defendants.  The negligent misrepresentation cause of action similarly asks whether the plaintiff *reasonably relied* on the alleged misrepresentations.[2]  And unjust enrichment requires an assessment of the equities, which by

---

[1]    SKAT withdrew its unjust enrichment claims against Defendant Michael Ben-Jacob, in a clear concession that Mr. Ben-Jacob received none of the reclaim proceeds.

[2]    Courts appear to use the terms "reasonable" and "justifiable" interchangeably.  *See JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 405 (S.D.N.Y. 2004).

necessity requires balancing the conduct of the parties. The evidence at issue demonstrates SKAT's internal awareness of its vulnerability to false claims and its decision nonetheless to do nothing to address those vulnerabilities, and to instead continue to pay reclaims based on an abbreviated form, few supporting documents, and essentially no scrutiny. Those are exactly the kinds of facts a jury may consider in assessing whether reliance on those reclaim submissions was reasonable or justifiable.

Second, the challenged evidence goes directly to defendants' comparative negligence and statute of limitations defenses. Multiple of the sources SKAT wishes to exclude make clear that before 2015, SKAT saw a dramatic increase in reclaim filings which it linked to U.S. pension plans but failed to take basic steps—like asking for additional transaction records and supporting documentation—that could have uncovered the basis for SKAT's claims against the defendants. That is plainly relevant to whether SKAT was negligent and whether it acted with the required expedition to determine whether it had claims against those U.S. pension plans.

## II.    RELEVANT FACTS

The documents SKAT seeks to exclude contain the following critical information:

- In 2006, Lisbeth Rømer, the employee managing SKAT's dividend function, raised concerns about SKAT's dividend tax administration, noting "that today the dividend tax administration … is to a large extent administered blindly," and specifically pointed to "recovery of dividend tax under the double taxation agreements and with dividend tax refunds." Decl. of Marc Weinstein dated Aug. 15, 2024 ("Weinstein Decl.") Ex. 3 (Problem Catalog). SKAT did nothing in response. *See* Decl. of Andrew S. Dulberg dated Sep. 3, 2024 ("Dulberg Decl.") Ex. 1 (Bo Daugaard Dep. Tr. 99:18-100:2.)

- Also in 2006, the Ministry of Taxation's internal audit agency ("SIR") audited SKAT and concluded that "it is possible for dividend recipients to receive dividend tax, even if the company paying the dividend has not paid the withheld dividend tax to SKAT." Weinstein Decl. Ex. 5 (SIR 2006 Audit Report, para. 11, at 5).

- In 2007, SKAT's then-chief internal legal officer recommended "our dividend declaration forms should be carefully reviewed to make it clear what our requirements are for ownership, etc. and proof of this in order to obtain a refund of dividend tax." Weinstein Decl. Ex. 1 (Jeppesen Memorandum at 6). SKAT made no changes. Dulberg Decl. Ex. 2 (Reclaim Application).

- In 2010, SIR conducted another audit of SKAT and concluded that "there are no checks in connection with refund requests as to whether the investor is actually a shareholder and whether the investor is in fact liable for tax in Denmark or not," and that it did "not appear that the previous investigations initiated by SKAT ha[d] been followed up on." Weinstein Decl. Ex. 6 (SIR 2010 Audit Report, at 13). SKAT again did nothing.

- In 2013, after yet another audit, SIR concluded that "SKAT must, to a higher degree, ensure that divided tax is not unlawfully refunded." Weinstein Decl. Ex. 7 (SIR 2013 Audit Report at 4.2, p. 16). But SKAT did not change its rubber-stamp approach.

- In 2015, after SKAT decided to stop paying defendants' reclaims, SIR conducted a review into what had led to SKAT's vulnerability to the alleged fraud, and found SKAT's risk management and controlling activities "have generally not been satisfactory in terms of administration of divided tax and dividend tax refunds," and

3

that, because of "weaknesses resulting from a lack of information" about non-residents in SKAT's eKapital system, "[i]n by far the majority of cases," SKAT would not have information about the individual dividend recipient "which could form the basis of a control of the refund basis in the processing of a refund claim." Weinstein Decl. Ex. 9 (SIR 2015 Report, at 12.1, p. 6; at 14.5, p. 11).

- SKAT's own data showed that reclaim applications surged ten-fold between 2012 and 2014, an increase SKAT understood at the time was attributable to filings by "US pension funds." Weinstein Decl. Ex. 10 (NAO 2016 Report at 31).

- In 2016, the National Audit Office found that this surge in approvals reflected in data SKAT "already had" in 2014 "clearly indicated the need for a thorough analysis of the development in the reimbursement of dividend taxes and its causes" and should have caused the Ministry of Taxation to "inquire about or ask for documentation from SKAT of the explanation that US pension funds bought shares in Danish companies." Weinstein Decl. Ex. 10 (NAO 2016 Report at para. 44, p.24; p. 31).

- In that same report, the National Audit Office concluded that "SKAT's administration of and the Ministry of Taxation's supervision of the reimbursement of dividend tax have been very unacceptable" and "extremely inadequate." Weinstein Decl. Ex. 10 (NAO 2016 Report at 4). Even more damning, the National Audit Office explained that "[b]oth SKAT and the Ministry of Taxation **knew at least since 2010** that there were problems with the reimbursement of dividend tax," and further noted that "SKAT did not check completely basic information in the requests [for reimbursement]," including "ownership of the shares and whether the

applicant's dividend tax had been withheld."  Weinstein Decl. Ex. 10 (NAO 2016 Report at 5 (emphasis added)).

Collectively, this evidence provides ample reason for a jury reasonably and fairly to question whether SKAT's reliance on thinly documented claim forms that it knew it could not verify was justifiable, whether SKAT's own negligence contributed to any losses it suffered, and whether SKAT should have known of any potential claims against defendants far sooner than it did.  The motion should be denied.

### III.    LEGAL STANDARD

"Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds."  *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001).  Given the need to properly assess the factual context of a particular motion before ruling, courts may reserve decision until trial, or make a ruling "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce v. United States*, 469 U.S. 38, 41 (1984).

As this Court well knows, "relevant evidence is admissible" (Fed. R. Evid. 402), and the "standard of relevance established by the Federal Rules of Evidence is not high."  *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985) (Friendly, J.) (internal quotation and citation omitted).  Evidence "having any tendency to make [the existence of any] fact [that is of consequence to the determination of the action] more or less probable than it would be without the evidence" is relevant.  Fed. R. Evid. 401.

Under Rule 403 of the Federal Rules of Evidence, a court may exclude otherwise relevant evidence "if its probative value is ***substantially outweighed*** by a danger of ... unfair prejudice, confusing the issues, "[or] misleading the jury."  Fed. R. Evid. 403 (emphasis added).  As Rule

5

403 operates to exclude relevant evidence, "it is an extraordinary remedy that must be used sparingly." *George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir. 1990).

Relevance must be determined in reference to the elements of the causes of action SKAT chose to bring, and the various defenses to those causes of action. Under New York law, "[r]easonable reliance is an element of claims for fraud aiding and abetting fraud, and negligent misrepresentation." *Von Ancken v. 7 E. 14 L.L.C.*, 98 N.Y.S.3d 32, 34 (2019). And the reasonableness of a claim of reliance must be considered in light of both the plaintiff's sophistication and "the degree to which the truth was accessible to the defrauded person." *Banque Franco–Hellenique de Com. Int'l, et Mar., S.A. v. Christophides*, 106 F.3d 22, 27 (2d Cir. 1997). The question of "what constitutes reasonable reliance as 'always nettlesome because it is so fact-intensive.'" *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 407 (S.D.N.Y. 2004). Courts take a "contextual view, focusing on the level of sophistication of the parties, the relationship between them, and the information available at the time of the operative decision." *Id.* In *Winnick*, for example, plaintiff alleged that defendant engaged in fraudulent transactions to inflate income in order to fool the plaintiff. But the court, applying New York law, found questions of fact as to whether plaintiff's reliance on defendants' representations was reasonable, explaining that "where the plaintiff has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.") (internal quotation and citation omitted). *See also Waksman v. Cohen,* No. 00 CIV. 9005 (WK), 2002 WL 31466417 at *6-*9 (S.D.N.Y. Nov. 4, 2002) (finding no reasonable

6

reliance on property valuation where plaintiff failed to make any independent inquiry into the status of the property).[3]

Unjust enrichment requires an assessment of the equities, which by necessity requires balancing the conduct of the parties. *See, e.g.*, *Paramount Film Distrib., Corp. v. State of N.Y.*, 30 N.Y.2d 415, 421 (1972). And payment by mistake requires an assessment of whether a party is "truly *mistaken* when he or she intentionally proceeds without further investigation of his or her rights." *Est. of Hatch, ex rel. Ruzow v. NYCO Mins. Inc.*, 704 N.Y.S.2d 340, 341 (3d Dept. 2000) (emphasis in original). Defendants raise comparative negligence and statute of limitations defenses which also focus on SKAT's conduct.[4]

Each of these causes of action and defenses has one overarching question in common: whether SKAT knew or should have known that the defendants' tax refund applications were fraudulent. As this court previously held in discussing the statute of limitations defense, "whether SKAT knew, or should have known, that the defendants' tax refund applications were fraudulent is a fact-bound question that must await trial." *In re Customs and Tax Administration of the Kingdom of Denmark (SKAT) Tax Refund Litigation*, No. 18-CV-04051, 2023 WL 8039623, at *16 (S.D.N.Y. Nov. 20, 2023).

---

[3]    Even in circumstances where a fraud is uncontested, the reasonableness of the reliance must be assessed. Indeed, courts have held that "[a] heightened degree of diligence is required where the victim of fraud had hints of its falsity," including where "[c]ircumstances [are] so suspicious as to suggest to a reasonably prudent plaintiff that the defendants' representations may be false." *Winnick*, 350 F. Supp. 2d at 406.

[4]    SKAT suggests in its motion that the challenged evidence may be excluded because this court has already made a determination that "'none' of the issues concerning SKAT's administration of dividend tax of which it was aware before defendants' fraud 'demonstrate that SKAT knew or should have known of its claims against the defendants.'" SKAT Mem. at 13 (quoting *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-CV-04051, 2023 WL 8039623, at *15 (S.D.N.Y. Nov. 20, 2023)). SKAT is wrong. This Court was not addressing the relevance or admissibility of that evidence, it was merely explaining that the evidence was not sufficient for the Court to rule on the statute of limitations defense in the context of summary judgment.

## IV.    ARGUMENT

SKAT asks this court to exclude from trial as irrelevant and potentially confusing or misleading "*all evidence* relating to the challenges in SKAT's administration of dividend tax identified" in a 2007 internal memorandum, a 2006 "[p]roblem [c]atalog," SIR's internal audit reports, and the National Audit Office's report, on the grounds that "[n]one of the issues identified therein have any bearing on the parties' claims or defenses in these cases," and, specifically with respect to SIR's 2015 report and the National Audit Office's 2016 report, that these reports are unfairly prejudicial because the jury may "defer[]" to the conclusions in those reports rather than deciding the issues themselves.  SKAT Mem. at 12-13.  On both counts, SKAT is wrong.

The evidence the defendants seek to present goes squarely to the core questions of what SKAT knew or should have known, and when.  The defense does not plan a generic attack on SKAT as bumbling in its management of dividend refund claims.   Rather, the evidence SKAT seeks to exclude paints a pointed picture, showing (a) that SKAT was well aware for years that it could not verify whether refund applicants in fact were the beneficial owners of the underlying shares, leaving SKAT vulnerable to the very thing that it now alleges happened: false claims from people not entitled to recover dividend withholdings, and that SKAT chose to do nothing about it, and (b) that the specific claims at issue here – claims by American pension plans – were identified back in 2014 as the cause for a dramatic surge in refund claims, that the Danish government agrees that this was an obvious red flag that required scrutiny, but that again SKAT did nothing.  The Court should permit the defendants to present this evidence to the jury.

### A.    Ms. Rømer's Problem Catalog

Lisbeth Rømer was the head of SKAT's dividend tax administration and the author of the 2006 Problem Catalog.  As she later testified, "At the meeting of the customs and tax agency, it was agreed on October 2004, that the dividend tax administration should drop a summary catalog

of the problems that had not been resolved over time." Dulberg Decl. Ex. 3 (Rømer Dep. Tr. 105:2-10). One of the concerns raised was that SKAT may have been refunding dividend tax without knowing whether the claimant was entitled to a refund. Dulberg Decl. Ex. 3 (Rømer Dep. Tr. 105:21-106:1).

The relevance of this piece of evidence is not simply (as SKAT now contends) that Ms. Rømer identified that SKAT was unable to confirm the owners of shares in omnibus accounts at VP Securities. SKAT refers to this as the "main challenge" identified by Ms. Rømer, but that description elides that the Problem Catalog contains *more than twenty pages* of issues with SKAT's administration of the dividend withholding tax program. SKAT Mem. at 5. Ms. Rømer was painting in broad strokes when she concluded that "the dividend tax administration today is to a large extent administered blindly[,] as the information on the actual distribution is not known at the time, the administration conducts its business operations." Dulberg Decl. Ex. 3 (Rømer Dep. Tr. 152:4-153:7). The evidence shows that during the time that she was in charge of the dividend withholding tax refund administration at SKAT (2002-13), Ms. Rømer made multiple attempts to inform senior SKAT management of problems with SKAT's process for issuing refunds of withheld dividend tax. Dulberg Decl. Ex. 3 (Rømer Dep. Tr. 27:4-27:10, 30:8-31:12, 31:24-32:2, 32:25-33:18). The 2006 Problem Catalog is one such effort, and one that identified for SKAT and its leadership that SKAT did not receive particularized information about the identity of the ultimate foreign beneficial owner of shares. That fact is directly relevant to why SKAT was vulnerable to the fraud alleged here: had it been able to determine the foreign owner of shares in omnibus accounts at VP securities, it could have conducted tracing to determine whether the reclaims here related to any such shares. Knowing that it lacked that ability, SKAT could have changed its processes to require more documentation before paying reclaims. It chose not to do

so. A jury could easily find that choice to be negligent and could find that it probative of whether SKAT's reliance on reclaim forms was reasonable.[5]

The Problem Catalog also recommended changes to the documentation requirements associated with dividend withholding tax reclaim applications, which were not adopted. SKAT attempts to argue that "the only issue identified in the Problem Catalog that was not resolved" related to shares held in omnibus accounts. SKAT Mem. at 6. But Bo Daugaard—the SKAT internal auditor who reviewed the Problem Catalog as the time—testified during his deposition that although he reviewed the Problem Catalog, "nothing happened" with it. Dulberg Decl. Ex. 1 (Daugaard Dep. Tr. 99:24-100:2).

SKAT complains that this evidence might lead a jury to believe that SKAT "could not rely on the representations made and custodial documents submitted" as part of the reclaim applications. SKAT Mem. at 15-16. But whether it was reasonable for SKAT to do so—given all it knew—is a question of fact for the jury to decide, and the defense is entitled to introduce SKAT's own internal documents relevant to that question.

### B.    Mr. Jeppesen's 2007 Memorandum

SKAT's argument to exclude the 2007 Jeppesen Memorandum fails. In 2007, the then-chief legal officer of SKAT, Mr. Leif Jeppesen, wrote a memorandum that identified a "major control problem" with SKAT's dividend program and, after laying out the issue, recommended that SKAT's "dividend declaration forms should be carefully reviewed to make it clear what our

---

[5]    And the obvious fact that these problems made it vulnerable to false submissions was not lost on SKAT. Notes kept by SKAT executive Lars Nording reflect that when he learned in 2011 of an investigation into large unexplained deposits into the account of the SKAT employee charged with reviewing dividend reclaims, Nording quickly (and correctly) identified the risk that these were "illegal transfer[s]" due to "falsified refund applications." Dulberg Decl. Ex. 4 (Commission Exhibit Pages with Notes of Lars Nording).

requirements are for ownership … and proof of this in order to obtain a refund of dividend tax." Weinstein Decl. Ex. 1 (Jeppesen Memorandum at 5-6).  This memorandum demonstrates that SKAT knew about the risk of wrongful refund claims as far back as 2007.  SKAT now argues that the 2007 Jeppesen Memorandum is irrelevant because the risk this memorandum put SKAT on notice of was ***not*** the risk of fraud, but rather a different kind of risk arising from stock lending. This is an unwarrantedly narrow view of the memorandum.  Jeppesen highlighted that in stock lending transactions, SKAT could not distinguish between the owner of a share and its borrower, and therefore might pay both.  That risk existed because SKAT did not require refund applicants to provide detailed transaction records which would have made the distinction clear.  The existence of that risk in legitimate stock loan transactions also necessarily meant that SKAT would be similarly unable to detect allegedly fraudulent transactions that—like the Solo transactions—included stock lending as a step.  Jeppesen suggested that SKAT consider requiring more information to address the problem.   SKAT chose not to.

The 2007 Jeppesen Memorandum is therefore relevant to assessing whether it was reasonable for SKAT to rely on the limited information it required, any balancing of the equities in the context of SKAT's unjust enrichment claims, assessing SKAT's comparative negligence in the context of its negligent misrepresentation claim, and determining whether it was truly mistaken when it paid out the refunds without doing any investigation in the context of its payment-by-mistake claims.

In addition to challenging relevance, SKAT also alleges that this evidence is "unfairly" prejudicial.  But "any prejudice [SKAT] may experience as a result of [the] admission of these" items of evidence "derives from the probative value that [this evidence has] for aspects of [the defendants'] case."  *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 282 (S.D.N.Y. 2015).

There is nothing inflammatory or misleading about the evidence. It simply and fairly supports the defendants' position regarding SKAT's failures as identified by SKAT itself. And of course, SKAT is free to seek a specific instruction if it believes ones is necessary to assure that this evidence not "confuse and mislead the jury." *In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS), 2003 WL 1610775, at *14 (S.D.N.Y. Mar. 26, 2023) (risk of prejudice and juror confusion can be cured by carefully drafted jury instructions); *see also* SKAT Opp. To MBJ Severance Mot., *In re Customs and Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, Case No. 1:18-md-2865, ECF 1025, at 8 (S.D.N.Y. May 31, 2024).

### C.    SIR's Reports (2006, 2010, 2013, 2014, 2015)

The Ministry of Taxation has an internal agency (SIR) that conducts audits on behalf of the National Audit Office of the Ministry. SIR conducted audits of SKAT in 2006, 2010, 2013, 2014, and 2015. Each of those audits identified serious deficiencies with SKAT's administration of the dividend program. SKAT now seeks to exclude each of the SIR reports on the ground that the issues identified therein were, in SKAT's telling, not *precisely* the same issues in the case at bar. But each of these documents, like the 2007 Jeppesen Memorandum and the 2006 Problem Catalog, put SKAT on continued notice that it still could not confirm that the reclaim applicants were in fact the beneficial owners of the dividends. Solo is alleged to have taken advantage of precisely that vulnerability, generating paperwork that supported refund claims that SKAT alleges were based upon ownership of shares that did not exist. The defendants are entitled to put this information in front of the jury because collectively it tends to show that it was not reasonable for SKAT to rely on the extremely limited information that it required from claimants when paying refunds to the defendants at a time when it knew—and had known for years—that this information was not enough for it to confirm that the applicant was actually entitled to the refund. And that knowledge, combined with the surge in reclaims from 2012 to 2014 by U.S. pension funds,

certainly should have put SKAT on notice of the possibility that it was being defrauded, which is highly relevant to whether SKAT, by 2014, had, in the court's words, "reason to investigate whether [it] had been defrauded but failed to do so**.**"  Mem. Op. Denying Ben-Jacob Mot. Summ. J., *In re Customs and Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-CV-07824, 2024 WL 3937599, at *5 (S.D.N.Y. Aug. 26, 2024).

The 2006 SIR report concluded that SKAT did not satisfactorily control the administration of dividend withholding tax refunds.  Even if SKAT were correct that those criticisms were resolved before defendants began submitting reclaim applications, that hardly makes it ***irrelevant***. If SKAT was able to resolve concerns about a 2006 SIR report, it is possible it would only enhance the jury's skepticism of SKAT's argument that it could not have resolved the concerns identified in later internal audit reports.

The 2010 SIR report is the result of an investigation initiated by the then-head of the Department of the Ministry of Taxation, who was concerned that SKAT might be refunding more in dividend withholding tax to foreigners than was paid to SKAT.  The report concluded "[t]here is no check as to whether dividend tax is requested more than once per share."  Weinstein Decl. Ex. 6 (2010 Audit Report, at 12).  Essentially, SIR found in 2010 that SKAT was launching money out the door without any controls whatsoever.  And yet in response to this report, SKAT made no changes to its habitual practice of issuing refund payments.  Nor did it make any attempt to verify the information it received, whether from third-party financial institutions, foreign tax authorities, or the claimants themselves.  JSUMF ¶ 33.  Despite the continued red flags and alarm bells warning that SKAT was not verifying beneficial ownership, SKAT took no action to confirm for itself that there was a proper basis for the reclaim payments it made.  This concern is similarly reflected in the 2014 and 2015 reports.

The relevance of these reports to SKAT's knowledge of potential fraud, whether its reliance on reclaims was reasonable, its comparative negligence, and unjust enrichment's balancing of the equities is obvious. SKAT insists that the defendants defrauded it because the defendants were not the beneficial owner of dividends. SKAT Mem. at 5. But these audit reports, along with the 2007 Jeppesen Memorandum and the 2006 Problem Catalog, reflect that SKAT knew for years that it was paying out refunds to claimants without any way to ascertain that they were the beneficial owners of the dividends. And yet SKAT continued making payments without taking any steps to address the issues previously raised. It is hard to conceive of evidence more relevant to the questions of reasonable reliance, comparative negligence or the balancing of the equities. And this evidence is also uniquely relevant to the statute of limitations defense because it shows that SKAT in fact knew it was at risk of paying out illegitimate claims, but conducted no investigation in 2014 when its data showed an unexplained ten-fold surge in refunds, attributable largely to U.S. pension plans (i.e. the defendant pension plans and other Solo clients). Nor are these reports unfairly prejudicial or likely to confuse or mislead the jury. With respect to the 2015 SIR report, SKAT suggests that to the extent SKAT's controls over the reclaim program are relevant—and they are—"the jury should make its own determination on SKAT's controls based on the underlying evidence." SKAT Mem. at 18. SKAT cannot be serious; the Danish government (of which SKAT alleges it is a part) has already determined that SKAT's controls were inadequate. It reached that conclusion not in the abstract, but in a 2015 audit focused in particular on understanding the circumstances that led to the alleged fraud at issue here. *See* Weinstein Decl. Ex. 9 (SIR 2015 Report at 7) ("The analysis primarily included the period 2012 to 2015 when the alleged fraud took place"). It is hard to think of a worse use of trial resources than requiring the jury to start from scratch on that question, without the benefit of this admission. Unsurprisingly,

the case SKAT cites is far off point. There, in a criminal prosecution with its attendant confrontation concerns, the court excluded as cumulative and not probative records from the National Credit Union Association ("NCUA"), which found fraud during an examination of a federal credit union, because the government had the option of introducing the underlying evidence on which NCUA relied in reaching its conclusions. *See United States v. Murgio*, No. 15-CR-769(AJN), 2017 WL 365496, at \*16 (S.D.N.Y. Jan. 20, 2017). Of course, in a criminal fraud case the government may not substitute a third party's conclusion that fraud occurred for direct evidence of the fraud. But that hardly means that a government agency's conclusion that it had been negligent would be inadmissible where, as here, that negligence is relevant to each of the causes of action alleged by that very government agency. And the 2015 Report is evidence of more than simply the conclusions reflected within; it contains a factual accounting of what SKAT knew and when, a key factual question for the jury in assessing SKAT's claims of fraud, negligent misrepresentation, unjust enrichment, and payment-by-mistake. It also notes that despite receiving prior assessments of its practices from SIR, SKAT had "not yet implemented a number of important recommendations that allow for," among other things, "[m]aking sure that dividend tax is not wrongfully refunded." Weinstein Decl. Ex. 9 (SIR 2015 Audit Report, p. 11). When its probative value is assessed against the speculative likelihood of confusion and prejudice, Rule 403's balancing does not remotely weigh in favor of exclusion.

Finally, the relief SKAT seeks is far too broad. The 2015 audit report contains data on the net withholding tax collected and refunds paid. Weinstein Decl. Ex. 9 (SIR 2015 Audit Report at 15-22). That information is relevant to assessing whether SKAT can meet its burden of proving loss, and SKAT has identified no basis to exclude it.

### D.    The National Audit Office's 2016 Report

In February 2016, the Danish National Audit Office published a report to the Danish Public Accounts Committee assessing whether SKAT's administration of the dividend tax had been satisfactory.    Like the 2015 SIR audit, the purpose of the report was to understand the circumstances that led to the fraud alleged here.    Weinstein Decl. Ex. 10 (NAO 2016 Report at 3) ("The subject of this report is SKAT's administration of and the Ministry of Taxation's supervision of dividend tax in the period 1 January 2010 – 5 August 2015 which the Public Accounts Committee asked the National Audit Office of Denmark to review in September 2015.    The request was made because of the assumed fraud in connection with reimbursement of dividend tax[.]").    The report castigates SKAT, calling its administration of dividend withholding—and the Ministry of Taxation's supervision of it—"very unacceptable" and "extremely inadequate."    Weinstein Decl. Ex. 10 (NAO 2016 Report at 4).    And yet SKAT argues before this Court that the report is irrelevant because it just retreads the same ground as SIR's prior reports, and because it has "nothing to do with how the defendants perpetrated their fraud on SKAT."    SKAT Mem. at 19.

The retrospective analysis of the National Audit Office of Denmark is *directly* relevant to when SKAT should have known of its claims.    SKAT's awareness of general issues with respect to its administration of dividend withholding tax is squarely relevant to, among other things, the defendants' statute of limitations defense.    As SKAT acknowledges, the report concludes that the Ministry of Taxation should have investigated sooner the increase in refund claims and payments and that SKAT's "reimbursement" of tax refund claims "was made on a completely inadequate basis and SKAT did not check completely basic information in the requests."    Weinstein Decl. Ex. 10 (NAO 2016 Report at 5).

Indeed, the report concludes that SKAT should have known of problems with its dividend administration *before* it received public information of assumed fraud in 2015—by 2014 SKAT

"knew that the number of requests and the total reimbursement amount had increased significantly and SKAT also knew that the internal controls were inadequate." Weinstein Decl. Ex. 10 (NAO 2016 Report at 5). The report does not stop at SKAT; it also explains that the Ministry of Taxation's supervision of SKAT was "fragmented and passive," and that the Ministry "did not compare the information that [it] received as part of its ordinary supervision with the other indications of problems with the reimbursements of dividend tax that the Ministry received regularly through the years." Weinstein Decl. Ex. 10 (NAO 2016 Report at 6 (emphasis added)). If nothing else, this report demonstrates that SKAT's cramped reading of what should have put it on notice of the defendants' alleged fraud is not reasonable; the National Audit Office concluded that "very simple analyses  of the reimbursement of dividend tax, based on data that SKAT already had, clearly indicated the need for a thorough analysis of the development in the reimbursements of dividend taxes and its causes." Weinstein Decl. Ex. 10 (NAO 2016 Report at para. 44, p. 24).

Moreover, like the 2015 SIR report, the 2016 report is also relevant for a reason not addressed in SKAT's motion. It contains data on the net withholding tax collected and refunds paid that are relevant to assessing whether SKAT can meet its burden of proving loss. *See* Weinstein Decl. Ex. 10 (NAO 2016 Report at Par. 58 and Figures 7 & 8).

SKAT's Rule 403 arguments are unpersuasive. "[F]or relevant evidence to be excluded on this basis, the imbalance must be substantial, and the prejudice must be unfair." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997). SKAT clears neither bar. It first argues that the National Audit Office's conclusions with respect to when the Ministry or SKAT should have investigated would "muddle the Danish law statute of limitations standard the jury is meant to apply." SKAT Mem. at 20 (internal quotation omitted). This is incorrect. The issue is a simple one: SKAT's claims are subject to a three-year statute of limitations, running from the point at

which SKAT knew or should have known of its claims against the defendants.  Mem. Op. Summ. J., *In re Customs and Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 1:18-md-2865, Dkt. 189 at 35 (S.D.N.Y. Nov. 20, 2023).  The evidence SKAT seeks to exclude goes directly to the jury's factual evaluation of what SKAT knew, what it should have known, and when.  It has nothing to do with what legal standard the jury should apply to its analysis of the facts, which will be guided by this Court's instructions, and which will in no way be "muddled" by a full consideration of the factual record.

SKAT next argues that the National Audit Office's conclusions would "predispose the jury to adopting the same findings."  SKAT Mem. at 20 (quoting *McLeod v. Llano*, No. 17CV6062ARRRLM, 2021 WL 1669732, at *4 (E.D.N.Y., Apr. 28, 2021)).  To be sure, that the Danish government itself has admitted its failures is persuasive evidence to which a jury may appropriately give weight.  But the Danish government cannot complain that its own words might be used against it.  Moreover, this audit appropriately rebuts SKAT's argument that none of the prior red flags raised by the the 2006 Problem Catalog, 2007 Jeppesen Memorandum, or the SIR audit reports put it on notice of the risk of fraud in its administration of dividend tax refunds.  That is not the conclusion the Danish government itself reached.  Should SKAT's witnesses testify to that effect, defendants should be permitted to confront them with evidence of a contrary conclusion by one of its oversight agencies.

None of the cases SKAT points to supports the exclusion of this evidence.  In *McLeod*, an excessive force case, the district court excluded evidence related to an internal investigation and administrative trial, which made conclusions about whether a police officer defendant had used excessive force on the plaintiff.  2021 WL 1669732, at *4.  But there, the Court was protecting the police officer against the prospect that someone else's conclusions might be used against him.  In

that context, the court appropriately worried about the different standard of proof applied in the internal investigation. *Id.* Here, it is the Danish government's own words that are being used against SKAT, the plaintiff in this case, which contends it is an arm of the Danish government, and there is no possible unfairness in that. Nor is there potential for confusion caused by different burdens of proof. The audit report does not purport to find the same conclusion the jury is being asked to reach (e.g., SKAT's negligence), but by a different and lower standard of proof. Rather, it made factual observations about SKAT's inadequacies that the jury may find informative, as it assesses the questions before it.

In *Casmento v. Volmar Construction, Inc.*, No. 20-CV-0944 (LJL), 2022 WL 1094529 (S.D.N.Y., Apr. 12, 2022), the plaintiff's claims of wrongful termination were dismissed by OSHA and the EEOC at prior administrative proceedings. *Id.* at *1. The district court excluded those findings because it was not clear what evidence was considered by the agencies and the offered documents contained only "conclusory findings that fail[ed] to describe the nature of [the] investigation or the basis for its conclusions." *Id.* at *2 (quoting *Cook v. Hatch Assocs.*, No. 02-CV-0065A, 2007 WL 1267023, at *2 (W.D.N.Y., Apr. 30, 2007)). Again, that is the opposite of this case. SKAT is not seeking to exclude some third party's conclusions and findings, but the findings of the Danish government itself. And of course, the Ministry of Taxation had the opportunity to respond to the audit, and its reactions are included within the 2016 report. If SKAT really believes those findings were based on an inadequate predicate, it can present that evidence. But the National Audit Office report thoroughly explains the nature of its investigation and the basis for its assessment of SKAT's actions, and they are ample. Weinstein Decl. Ex. 10 (NAO 2016 Report at 9) ("The objective of the investigation is to assess whether SKAT's administration of the reimbursement of dividend tax and the Ministry of Taxation's supervision of the

19

reimbursement of dividend tax were satisfactory."); *id.* at 11-12 (explaining that the investigation was based on reviews of "SIR's analysis from September 2015 of SKAT's administration of dividend tax and reimbursements of dividend tax," selected analyses from that report, the National Audit Office of Denmark's annual audit and IT audit of the area of dividend tax for the financial year 2015, the material and audit reports from SIR, a review of "reports, minutes of meetings, the Ministry of Taxation's monthly income lists to the Danish Fiscal Affairs Committee and the Finance Committee of the Danish Parliament and SKAT's annual approvals of accounts," and meetings with SKAT, the Ministry of Taxation, and SØIK).  Nor is there any real concern that permitting witnesses to be questioned about this report will cause the trial to "deteriorate into a protracted and unproductive struggle over how the evidence admitted at trial compares to the evidence considered by the agency." *Casmento*, 2022 WL 1094529, at *2 (internal quotation and citation omitted).  The facts described in the report are an ample basis for its conclusions, and SKAT does not contend otherwise.  Nor does SKAT claim that the report got any facts wrong or identify any additional facts that undermine any specific conclusion.  SKAT argues that the National Audit Office did not know the means by which defendants committed their alleged fraud when it issued the report.  But that is of no moment—the report documents serious breakdowns in SKAT's administration of the program that go directly to the reasonableness of its reliance on any reclaim applications and its own comparative negligence, as well as the statute of limitations.  The reasonableness of SKAT's conduct does not depend on the details of Solo's alleged fraud.  In other words, if SKAT's conduct was adjudged unreasonable *before* one knew those details, its conduct would not suddenly become reasonable just because its failures allegedly permitted Solo to profit from reclaims on shares that did not exist.  This is extremely probative evidence that is not substantially outweighed by the risk of unfair prejudice, wasting time, or confusing the jury.  Fed.

R. Evid. 403.  If there is a basis to disagree with this evidence, witnesses confronted with this document will be free to put the report in context through their testimony.  Any residual risk of confusion by the jurors can be appropriately addressed through the court's instructions.

SKAT's additional case law is inapposite.  *Arlio v. Lively* is a wrongful termination case where the district court was found to have erred in permitting a plaintiff to testify about a prior arbitration proceeding and his damage report.  474 F.3d 46 (2d Cir. 2007).  Importantly for the court's Rule 403 analysis, the probative value of the evidence in that case was weak—it only served to explain why the plaintiff had not sought back wages.  And the evidence had the prejudicial effect of telling the jury that "an expert state board" had already ruled the dismissal unlawful, which was the very legal issue before the jury for determination.  *Id.* at 52.  Similarly, in the unpublished decision *McClain v. Pfizer Inc.*, No. 3:06-CV- 01795-VLB, 2010 WL 746777 (D. Conn. Mar. 1, 2010), the court excluded a "final decision" from OSHA on a prior whistleblower complaint and documents from the Connecticut Department of Public Health, on the grounds that the documents reached "ultimate conclusions that a jury would have to make on its own" and that were based on "facts … which do not require specialized education, training, or experience, or the details contained in these reports."  *Id.* at *1-2.  But here, the report constitutes not ultimate conclusions, but evidence of facts gathered and assessments made about the dividend tax program administered by the Danish government.  SKAT has insisted that it is functionally the Kingdom of Denmark, so if taken at its word, it seeks here to exclude ***its own analysis*** of ***its own incompetence*** following interviews with ***its own staff***.  Unlike the challenged evidence in *Arlio*, the report does not address the legal question of comparative negligence or reasonable reliance.  It just offers facts and conclusions relevant to those questions.  Nor does the report purport to make legal conclusions concerning the application of the statute of limitations to SKAT's claims.  And

unlike in *McClain*, the details within the report, along with the unvarnished analysis of the National Audit Office, which is an internal agency within the Ministry of Taxation, about one of the Ministry's subordinate offices, based on its own expertise and experience, will be very helpful to the jury.  Permitting the jury to understand the full picture—including these after-the-fact assessments—does not run the risk that the jury will substitute the National Audit Office's judgment for its own.  But excluding this evidence would deprive the jury of critical information. With appropriate instruction from the Court, the jury will be more than capable of putting this evidence in context.  The balancing test of Rule 403 simply does not justify the report's exclusion.

## V.    CONCLUSION

SKAT's motion should be denied.

Dated: September 3, 2024

Respectfully submitted,

/ s/ *Peter G. Neiman*
Boyd M. Johnson
Peter G. Neiman
Alan E. Schoenfeld
Nelson S. Castano
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Boyd.Johnson@wilmerhale.com
Peter.Neiman@wilmerhale.com
Alan.Schoenfeld@wilmerhale.com
Nelson.Castano@wilmerhale.com

Andrew S. Dulberg
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6352
Andrew.Dulberg@wilmerhale.com

Brittany R. Warren
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington D.C., 20037
(202) 663-6772
Brittany.Warren@wilmerhale.com

*Attorneys for Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM Capital Pension Plan, RJM Capital Pension Plan Trust, Routt Capital Pension Plan, Routt Capital Trust*

/s/ *Sharon L. McCarthy*
Sharon L. McCarthy
KOSTELANETZ LLP
7 World Trade Center, 34th Floor
New York, NY 10007
(212) 808-8100
smccarthy@kostelanetz.com

Daniel C. Davidson
KOSTELANETZ LLP
601 New Jersey Avenue, NW
Suite 260
Washington, DC 20001
(202) 875-8000
ddavidson@kostelanetz.com

*Attorneys for Defendants John van Merkensteijn, III, Elizabeth van Merkensteijn, Azalea Pensión Plan, Basalt Ventures LLC Roth 401(K) Plan, Bernina Pension Plan, Bernina Pension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan*

23

/s/ *David L. Goldberg*
David L. Goldberg
Michael M. Rosensaft
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020
(212) 940-8800
david.goldberg@katten.com
michael.rosensaft@katten.com

*Attorneys for Defendants Robert*
*Klugman, RAK Investment Trust,*
*Aerovane Logistics LLC Roth 401K Plan,*
*Edgepoint Capital LLC Roth 401K Plan,*
*Headsail Manufacturing LLC Roth 401K*
*Plan, The Random Holdings 401K Plan,*
*The Stor Capital Consulting LLC 401K*
*Plan*


/s/ *Thomas E.L. Dewey*
Thomas E.L. Dewey
Sean K. Mullen
DEWEY PEGNO & KRAMARSKY LLP
777 Third Avenue
37th Floor
New York, New York 10017
(212) 943-9000
tdewey@dpklaw.com
smullen@dpklaw.com

/s/ *Elliot R. Peters*
Elliot R. Peters
Julia L. Allen
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
(415) 962-7188
epeters@keker.com
jallen@keker.com

*Attorneys for Defendant Michael Ben-*
*Jacob*

24

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2024 the foregoing document was served electronically to all parties of record by the CM/ECF system.


_/s/ Peter G. Neiman_

Peter G. Neiman

September 3, 2024