# Exhibit 105

**DRAFT – for discussion purposes only**

[addressee]

BRUSSELS
Bastion Tower
Place du Champ de
Mars/Marsveldplein 5
B-1050 Brussels
T+ 32 2 504 7000
Direct T+ 32 2 504 7011
F+ 32 2 504 7200
Direct F+ 32 2 404 7011
E  Axel.Haelterman@freshfields.com
W  freshfields.com

DOC ID
OUR REF  AXH/EM
YOUR REF
CLIENT MATTER NO.

Dear Sir

**Hedged investment in Belgian Shares**

You have asked us to express our opinion on the following issues

(a)     Would [name] (the ***Pension Plan***) qualify as a "pension fund" as defined in
        article 3.1. k) of the Belgian – American double tax treaty of 27 November
        2006 (hereafter the ***Treaty***);

(b)     Would the Pension Plan qualify as a US Resident under article 4.3 a) of the
        Treaty; and

(c)     Would the Pension Plan be entitled to the benefit of the dividend withholding
        tax exemption provided for under article 10.4 b) of the Treaty with respect to
        dividends made payable by Belgian listed companies (the ***Belgian Issuer(s)***)
        over the Shares (as defined below) described in the Transaction (as defined
        below) to the limited partnership [name] established as a Delaware Limited
        Partnership (the ***Partnership***) to which the Pension Plan is a Limited Partner.
        In this respect, the following questions arise:

        (i)      Whether the Pension Plan would qualify as beneficial owner of such
                 dividends; and

        (ii)     Whether the dividends should not be considered to be derived from the
                 carrying on of a business by the Pension Plan or through an associated
                 enterprise.

Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered
number OC334789. It is authorised and regulated by the Solicitors Regulation Authority. For regulatory information please
refer to www.freshfields.com/support/legalnotice.

A list of the members (and of the non-members who are designated as partners) of Freshfields Bruckhaus Deringer LLP and
their qualifications is available for inspection at its registered office, 65 Fleet Street, London EC4Y 1HS or at the above
address. Any reference to a partner means a member, or a consultant or employee with equivalent standing and
qualifications, of Freshfields Bruckhaus Deringer LLP or any of its affiliated firms or entities.

Abu Dhabi  Amsterdam  Bahrain  Barcelona  Beijing  Berlin  Brussels  Cologne  Dubai  Düsseldorf  Frankfurt am Main
Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  London  Madrid  Milan  Moscow  Munich  New York  Paris  Rome
Shanghai  Tokyo  Vienna  Washington

CONFIDENTIAL / PRIVILEGED - SUBJECT
TO 502(d) ORDER                                        WH_MDL_00463412

2|12

## 1. DESCRIPTION OF THE TRANSACTION

1.1 The Pension Plan is an individual retirement account under Code section 408A of the US Tax Code [type to be verified: trust or roth IRA]. The bylaws of the Pension Plan provide that the only activities carried out by the Pension Plan are [...] (see bylaws in annex 1).

1.2 The Pension Plan is the limited partner to the Partnership and has full economic interest in the Partnership.

1.3 The Partnership is a limited partnership under Delaware law and will be managed and controlled by a General Partner established in the US. The Limited Partnership agreement is attached in annex 2 (the *Limited Partnership Agreement*).

1.4 The Partnership is considered to be tax transparent for US law purposes. It is subject to Subchapter K and hence treated as tax transparent.

1.5 The Partnership will undertake a delta one market neutral trading strategy over Belgian shares (the "Shares"), consisting of capturing the basis difference between the price of the Shares and the price of the derivatives that can be traded in the market. The Partnership will acquire in a principal capacity listed Belgian Shares from third party inter dealer brokers and will subsequently be entitled to receive the dividend payable on the coupons attached to such Belgian Shares.

1.6 The Partnership will hedge its share positions by way of derivative instruments (e.g. futures or other derivatives such as swaps) and these will always and exclusively be cash settled.   To the best of the Partnership's knowledge, the counterparties to the derivatives will not be resident in Belgium (the *Hedge*).

1.7 When the Partnership acquires and holds listed Belgian Shares, it will be entitled to obtain the dividend payments on the Shares and it will retain all rights to the Shares (including voting rights) and none of these rights will be passed through to its derivative counterparty.   Further, there will be no restrictions as to what the Partnership can do with the Shares (i.e. it can at its own discretion choose to sell, re-hypothecate or lend the Shares).

1.8 The Partnership will hedge its exposure via a cash settled forward contract under which a third party will provide funding to the Partnership and will be exposed to

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00463413

reference transactions that the Partnership may undertake (see annex 3, the **Forward**).

1.9    The Partnership will not be under a contractual obligation to pay over the income received on the Shares (i.e., the dividends) to the ultimate beneficiary.  The expected dividend on the Shares is a component in calculating (i) certain amounts payable under the Hedge, and (ii) the initial market value of the Shares under the Forward but no adjustment is made to the Forward if the actual dividend received differs from the expected dividend.

1.10   Following [the Limited Partnership Agreement / the General Partner's resolutions dated [   ] it has explicitly been decided that] the activities that are carried out by the Partnership under the Limited Partnership Agreement solely consist of the investment, in the name of the Partnership but for the account of the Limited Partner, of the partnership assets and the profits and losses of the Partnership that are economically allocated to the Limited Partner in accordance with its interest in the partnership (see the Limited Partnership Agreement in annex 2 // the General Partners' Resolutions in annex 4).[*we would only need such General Partners' Resolution if the Limited Partnership agreement is insufficiently clear with respect to the Partnership's activities which may not consist of actively carrying on a business*]

1.11   The Partnership will not be under the obligation to sell the Shares on the termination of the Transaction.

1.12   The above under section 1 is referred to as the **Transaction**.

**2.     SUMMARY OF THE OPINION**

2.1    Based upon and subject to the description of the Transaction, the assumptions and the matters set out in section 4, we are of the opinion that:

(a)    The Pension Plan should qualify as a "pension fund" as defined in article 3.1. k) of the Treaty;

(b)    The Pension Plan should qualify as a US resident in application of article 4.3 a) of the Treaty;

(c)    The Pension Plan should be entitled to benefit from the withholding tax exemption provided for under article 10.4 b) of the Treaty for dividends made payable in respect of the Shares by Belgian Issuers to the Partnership. The

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00463414

Pension Plan should in this respect qualify as the beneficial owner of these dividends and the dividends should not be considered to be derived from the carrying on of a business by the Pension Plan or through the Partnership.

## 3.    ASSUMPTIONS

With your permission and without further enquiry, we have assumed that:

3.1    The description of the relevant facts in the description of the Transaction is accurate and complete.

3.2    Each agreement constitutes a legal, valid and binding obligation of the parties, enforceable against those parties in accordance with its terms.

3.3    Each of the parties to the various agreements regards the terms of each of the agreements they have entered into as accurately reflecting the legal relationship they wish to create between them and that such agreements will form the basis of the entire agreement between the parties (with no other (written or oral) agreement or arrangement behind it expressing any different true intentions).

3.4    The Pension Plan is entirely managed and controlled in the United States so that the issue whether the Pension Plan does qualify as a US resident is dependent on our legal analysis of article 4.3 a) of the Treaty, without the need for us to verify the factual elements relating to the tax residency of the Pension Plan;

3.5    Nor the Partnership, nor the Pension Plan, nor the General Partner has a permanent establishment in Belgium to which the Transaction or part thereof would need to be allocated.

3.6    The Belgian Issuers are Belgian tax resident entities both for the application of Belgian domestic tax law and for the application of any tax treaty between Belgium and any other jurisdiction, not acting through a non-Belgian permanent establishment.

3.7    The Transaction and all related elements will be disclosed appropriately and correctly in all relevant tax returns.

## 4.    DETAILED ANALYSIS OF THE OPINION

### A) Application of article 3.1. k) of the Treaty - "Pension Fund"

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00463415

4.1   As the Partnership is treated as tax transparent for treaty purposes, the Pension Plan should need to be able to invoke the application of the Treaty between Belgium and the US. Prior to the question whether the Pension Plan, which is established in the US, is a resident as described in article 4 of the Treaty that is entitled to Treaty benefits, the question arises whether the Pension Plan falls under the definition given to the notion "pension fund" under the Treaty.

4.2   The Treaty defines under article 3.1. k) that:

*"the term "pension fund" means any person established in a Contracting State that is:*

*i) operated principally:*

> *A) to administer or provide pension or retirement benefits; or*

> *B) to earn income for the benefit of one or more arrangements described in A); and*

*ii) is either:*

> *A) in the case of Belgium (…); or*

> *B) in the case of the United States, exempt from tax in the United States with respect to the activities described in clause i) of this subparagraph."*

4.3   The Technical explanation to article 3.1. k) of the Treaty[1] (the **Technical Explanation**), includes a list of persons that qualify as pension funds under US domestic law and that are therefore protected by the Treaty. This list encompasses a trust that is an individual retirement account under Code section 408A or a Roth individual retirement account under Code section 408A [to be verified which type].

4.4   Hence, as the Pension Plan qualifies under Code section 408A, the Pension Plan should qualify as a "pension fund" as defined in article 3.1. k) of the Treaty.

---

[1] Full title: *"Department of the treasury – Technical explanation of the convention between the government of the United States of America and the government of the Kingdom of Belgium for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income signed at Brussels on November 27, 2006".*

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00463416

### B) Application of article 4.3. a) of the Treaty - US Resident

4.5     Only residents as described in article 4 of the Treaty are entitled to claim any Treaty benefits. Paragraph 3 of article 4 explicitly provides that pension funds, even if they are tax-exempt entities, are regarded as residents of a contracting state entitled to Treaty benefits. This is confirmed in relation to the Pension Plan by Form 6166 issued by the IRS (see annex 5).

4.6     The Pension Plan, which qualifies as "pension fund" as defined in article 3.1. k) of the Treaty, should thus be able to qualify as a resident under the Treaty.

### C) Application of article 1.6 of the Treaty – Tax transparency

4.7     Article 1.6 of the Treaty provides that:

*"An item of income, profit or gain derived through an entity that is fiscally transparent under the laws of either Contracting State shall be considered to be derived by a resident of a State to the extent that the item is treated for purposes of the taxation law of such Contracting State as the income, profit or gain of a resident."*

4.8     Since for US tax purposes, the Partnership is subject to Subchapter K and treated as tax transparent, taxation takes place at the level of the partners, i.e. the Pension Plan. Hence the income derived by the Pension Plan through the Partnership should be considered to be derived by the Pension Plan directly.

### D) Application of article 10.4 (b) of the Treaty - Dividend exemption

4.9     Article 10.4 b) of the Treaty provides that:

*"4. Notwithstanding the provisions of paragraph 2, where the company paying the dividends is a resident of Belgium, such dividends shall not be taxed in Belgium if the beneficial owner of the dividends is:*

*a) (...)*

*b) a pension fund that is a resident of the United States, provided that such dividends are not derived from the carrying on of a business by the pension fund or through an associated enterprise."*

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00463417

4.10     This exemption should apply to the dividends made payable by the Belgian Issuer to the Partnership to which the Pension Plan is a limited partner.

      (a)     Indeed, the Pension Plan should qualify as a pension fund under article 3.1. k) of the Treaty, which should qualify as a resident of the US for Treaty purposes (see 4.1 – 4.6);

      (b)     The income derived through the Partnership should be considered to be derived by the Pension Plan (see 4.7 – 4.8)

      (c)     Moreover, the Pension Plan, as limited partner to the Partnership, is economically entitled to the dividends that will be made payable by the Belgian Issuers to the Partnership and which are benefits derived from the investments made by the Partnership. Therefore, the Pension Plan should be considered to be the beneficial owner of these dividends.

         The term "beneficial owner" is not defined in the Treaty, and is, therefore, defined as under the internal law of the country imposing tax (i.e. the country of source).

         (i)     The Technical Explanation specifically addresses the exemption for Pension Funds as follows:

            *"This rule is necessary because pension funds normally do not pay tax (either through a general exemption or because reserves for future pension liabilities effectively offset all of the fund's income), and therefore cannot benefit from a foreign tax credit. Moreover, distributions from a pension fund generally do not maintain the character of the underlying income, so the beneficiaries of the pension are not in a position to claim a foreign tax credit when they finally receive the pension, in many cases years after the withholding tax has been paid. Accordingly, in the absence of this rule, the dividends would almost certainly be subject to unrelieved double taxation."*

            The above consideration, that the beneficial ownership should reside with the pension fund to avoid unrelieveable double taxation, clearly meets the observations regarding the notion "beneficial ownership" contained in the OECD Model Commentary:

BRU3648870/1+

CONFIDENTIAL / PRIVILEGED - SUBJECT
TO 502(d) ORDER

WH_MDL_00463418

8 | 12

*"the term 'beneficial owner' is not used in a narrow technical sense, rather, it should be understood in its context and in light of the object and purpose of the Convention, <u>including avoiding double taxation</u> and the prevention of fiscal evasion and avoidance."*

Taking into consideration the above and the fact that the Belgian tax authorities have consistently adhered to the above OECD guideline, the Pension Plan should be considered the beneficial owner of the dividends. The fact that the Pension Plan distributes its income to pension beneficiaries, should thus not impact this analysis.

(ii)   The internal law notion of a beneficial ownership implies that the beneficial owner should not be under a contractual obligation to pay over the dividend income to an ultimate beneficiary. This interpretation given essentially aims at the situation where the holder of the Shares has issued share certificates to third parties for the account of which he would be holding the Shares. Such third parties would traditionally either have financed the share acquisition or have initially transferred the Shares to such holder.

The fact that the holder of the Shares would have sought external funding (leverage) for acquiring the Shares, should not impact on his ability to claim the withholding tax exemption. Where any such borrowing would take the form of a profit participating loan, care should be taken that such profit participation does not actually lead to an obligation to pay on the dividend to such lender. Taking the dividend coupon into account as one of the elements in order to calculate the profit sharing entitlement of the lender should not impact on the possibility to claim the withholding tax exemption.

Since the exclusion merely focuses on the obligation to pay over the dividend to a third party, it is important that the Hedge and the Forward are actually functioning as a market value guarantee, and do not imply the paying over of the income on the Shares.

As the Hedge and the Forward will allow the Partnership to obtain the dividend - to which the Pension Plan is economically entitled - on the Shares for its own account, even though, obviously, the market value taken into account in the framework of the Hedge and the Forward will

CONFIDENTIAL / PRIVILEGED - SUBJECT
TO 502(d) ORDER

WH_MDL_00463419

refer to an expected dividend value on the Shares, nor the Hedge, nor the Forward should, in our view, disallow the Pension Plan's beneficial entitlement to the dividends.

(d)  Finally, the dividends should not be considered to be derived from the carrying on of a business by the Pension Plan or through an associated enterprise.

In article 3.1. d) it is stated that the term "*enterprise*" applies to "*the carrying on of any business*". The Treaty also specifies in article 3.1. e) that a "*business*" "*includes the performance of professional services and of other activities of an independent character*". As the term "*business*" is not defined in the Treaty, this term should be construed in accordance with Belgian domestic law (see also administrative comments n°7/105).

The Belgian tax authorities have generally construed the term "*enterprise*" as referring to any economic entity that can generate profit from industrial, commercial or agricultural activity within the meaning of article 24 Belgian Income Tax Code (**BITC**).

Furthermore, article 182 BITC specifically provides the for non-profit entities, such as pension plans, the investment of funds collected in accordance with its statutory purpose does not qualify as transactions of a profit generating nature.

As the Pension Plan will be merely investing its funds through the Partnership and since neither the Pension Plan, nor the Partnership, will engage in any kind of industrial, commercial or agricultural activity these dividends should not be considered to be derived from the carrying on of a business.

4.11  For claiming the exemption at source certificate Div.276-aut should be provided - generally within 10 days after dividend date - to the dividend paying entity that needs to file its withholding tax declaration within 15 days after dividend date. The Belgian dividend paying entity needs to keep this certificate available to the Belgian tax authorities.

4.12  A reclaim of the Belgian withholding tax levied at source upon making payable of the dividends on the Shares issued by the Belgian Issuer should be done within three years starting from the 1st of January of the year following the year in which the dividends are made payable by the Belgian Issuer. Form 276 Div. – aut. (see annex 6) should to that end be filed with the Central Taxation Office Brussels-foreign

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00463420

countries (*Bureau de Taxation de Bruxelles-Etranger / Centraal Taxatiekantoor Brussel-Buitenland*) within this term. The handling of the tax reclaim and actual repayment of excess withholding tax generally takes about six months.

## 5.    FINAL REMARKS

This letter is confined to matters of Belgian tax law and is not to be read as extending by implication to any matters non-specifically referred to herein. Accordingly, we express no opinion with regard to any system of law (including jurisdictions in which our firm has an office) other than the tax laws of Belgium, all as they stand as at the date hereof and as such laws are currently interpreted in as at the date hereof published case law of the courts of Belgian (***Belgian Tax Law***).

In particular:

(a)    Belgian legal and fiscal concepts are expressed in English terms and not in their original Dutch or French terms. It should be understood that the concepts concerned may not be identical to the concepts described by the same English terms as they exist in the laws of other jurisdictions. It should be understood that Belgian tax and legal questions would ultimately be determined before the Belgian courts in proceedings conducted in the Dutch or French language and applying Belgian legal and fiscal principles. We can assume no liability for any misunderstanding so caused to the extent that the translation in this letter of such concepts into English does not precisely reflect their meaning in the Dutch or French language.

(b)    The letter may only be relied upon on the condition that any issues of interpretation or liability arising hereunder shall be governed by Belgian law and be brought before a Belgian court.

(c)    This letter speaks as of the date hereof. It supersedes any previous letter or draft letter relating to the transaction and any such previous (draft) letter may not be relied upon. No obligation is assumed to update this letter or to inform any person of any changes of law or other matters coming to our attention or occurring after the date hereof which may affect this opinion in any respect. In particular we do not address the possible effects of any particular draft/proposed changes that may merit attention.

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00463421

(d)     We have not been responsible for investigating or verifying the accuracy of the statements of fact (or statements of foreign law), or for verifying that no material facts have been omitted from the transaction description.

(e)     The letter is not to be read as extending by implication to any other matter in connection with the transaction or otherwise. The letter should not be relied upon for any purpose unconnected with the Transaction.

(f)     This opinion is prepared with professional diligence and care. However, it is not a guarantee of outcome or result. It should be understood that the expression in this letter of an opinion as to any matter does not provide assurance that a court or other tribunal, or any relevant (tax) authority, will not form a different conclusion.

(g)     This memorandum is solely for the benefit of [Pension Plan] and [the Partnership]. It relates only to the specific tax aspects under the Treaty and Belgian tax law of the proposed transaction which you have asked us to consider, and does not address any other tax, legal or regulatory aspects, or the position in other jurisdictions. This letter may be relied upon by you only and it may not be relied upon by, transmitted to or filed with any person, firm, company or institution without our prior written consent, save that this memorandum may be disclosed on a non-reliance basis without our prior written consent to [....].

Yours faithfully

Freshfields Bruckhaus Deringer LLP

BRU3648870/1+

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00463422

6.    **ANNEXES**

6.1    Bylaws of the Pension Plan;

6.2    Limited Partnership Agreement;

6.3    Forward agreement

6.4    General Partners' Resolutions dated [..];

6.5    Form 6166 issued by the IRS for the Pension Plan; and

6.6    Form 276 Div. – aut..

BRU3648870/1+

CONFIDENTIAL / PRIVILEGED - SUBJECT
TO 502(d) ORDER

WH_MDL_00463423